MAGDALA S. S. CO. v. H.,BAARS CO.

(Circuit Court of Appeals, Second Circuit. April 3, 1900.)

No. 134.

1. CHARTER PARTY—STRANDING—NEGLIGENCE OF OWNER—GENERAL AVERAGE.
    A ship in good condition, and in every way fit for the proposed voyage, started from Pensacola with a cargo of timber. She drew 23 feet, 6 inches less than her full laden draft. When she reached the bar 9 miles below Pensacola the water was 24 feet deep. The channel was narrow and tortuous,—shaped like the letter "S." A cross current struck her. She was near the bottom, did not follow the helm, and grounded. Similar accidents often happened at the same place, and were not preventable. *Held*, that the stranding was not caused by negligence of owner or unseaworthiness of ship, so as to relieve the owner of the cargo from liability, under a general average adjustment, for proportion of expenses incurred in getting the vessel afloat.

2. SAME—REASONABLENESS OF EXPENSES.
    A vessel was stranded in an exposed position at 7 p. m., and the captain engaged two tugs, which unsuccessfully pulled upon the ship until midnight; and the next morning he made a contract, dependent upon success, with a tugboat syndicate to get the vessel off for $3,000. Five tugboats then pulled ineffectually at intervals till midnight. The next morning the captain engaged lighters, and the deck load was taken off, and the same day the vessel was pulled from the bar. She was reloaded, and proceeded on her voyage. *Held*, that the employment of tugs and lighters was necessary, and that the expenses incurred by the captain were not unreasonable, so as to relieve the owner of the cargo from liability, under a general average adjustment, for its proportion of the expenses.

Appeal from the District Court of the United States for the Southern District of New York.

The libelant, a corporation, and owner of the steamship Magdala, brought a libel in the district court for the Southern district of New York against the defendant, also a corporation, and the charterer of the steamship, to recover its proportion, in accordance with a general average adjustment, of the expenses incurred by the vessel in getting her afloat after she had been grounded upon the bar nine miles below Pensacola. A decree for the amount as adjusted was entered. The respondent appealed to this court.

Lawrence Kneeland, for appellant.
J. Parker Kirlin, for appellee.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

PER CURIAM. The charter party provided that damages caused by stranding, even when occasioned by the pilot or master, not resulting from want of due diligence by the owners of the ship, should always be excepted, and that general average was to be in accordance with the York-Antwerp rules. The defenses were that the Magdala was unseaworthy; that her owners failed to exercise due diligence, in that she was loaded too deeply to cross the bar in safety; and that the stranding was caused by the negligence of the persons in charge of the navigation. The sums paid for expenses

were alleged to be unreasonable in amount. We agree with the conclusions of the district court that there was no adequate evidence to justify a finding that negligence in the navigation of the steamship was the cause of the stranding, or a finding of any unseaworthiness, and that the expenses were not unreasonable. The Magdala, a new ship, of about 2,300 tons net register, in good condition, and in every way fit for the proposed voyage, took on board at Pensacola a cargo of pine timber and plank for voyage to Rio de Janeiro, and got under way in the afternoon of December 1, 1895. She was under her own steam and had a tugboat ahead to assist her, and drew 23 feet, 6 inches less than her full laden draft. The water on the bar when the Magdala reached it was 24 feet. The existing channel at that point was narrow and tortuous,—shaped like the letter "S." When the vessel reached the bar a cross current struck her. She was near the bottom, did not follow the helm, and grounded about 7:30 in the evening. This accident often happened at the same place from the same cause, and was not preventable. The captain engaged two additional tugs, which unsuccessfully pulled upon the ship until midnight. On the next morning he made a contract, dependent upon success, with a tugboat syndicate to get the vessel off for $3,000. Five tugboats then pulled ineffectually at intervals during the day till midnight. It was apparent that the vessel must be relieved of a part of her cargo, and on the next morning, December 3d, the captain properly engaged lighters to take off the deck load, which was done; and at 10 p. m. of the same day the vessel was pulled from the bar, and went outside in the early morning of December 4th. She was reloaded on that day, and on December 5th proceeded on her voyage, as soon as a survey had been taken. The employment of tugs and lighters was necessary, for the ship lay in an exposed position; and had the wind increased, and bad weather occurred, the vessel and cargo would have been injured, and the deck cargo might have been lost. The contracts which the captain made were reasonable in their character,—neither corruptly, recklessly, nor fraudulently entered into. The total value of the property at risk is stated in the adjustment at £34,920, of which the value of the ship was £28,850. The rules in regard to salvage contracts upon which the courts of this country act have been recently carefully and thoroughly stated in The Elfrida, 172 U. S. 186, 19 Sup. Ct. 146, 43 L. Ed. 413, and it is unnecessary to enlarge upon this branch of the subject. The decree of the district court is affirmed, with costs.